# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| HAROLD PERSAUD, | ) CASE NO.    1:14 CR 276 |
|     Defendant- Petitioner, | ) |
|     v. | )   JUDGE DONALD C. NUGENT |
| UNITED STATES OF AMERICA, | )   MEMORANDUM OPINION |
|     Plaintiff-Respondent. | )      AND ORDER |

This matter comes before the Court upon Harold Persaud's Motion to Vacate under 28 U.S.C. § 2255. (ECF #217). The petition raises two grounds for relief, both involving allegations of ineffective assistance of counsel at trial and on appeal. The first ground alleges that counsel was ineffective for allowing "untested, unqualified 'expert' testimony and impermissible opinion testimony" to be admitted at trial, and for failing to challenge the admission of such testimony on appeal. The second ground claims ineffective assistance of counsel for failing to object to "amount of loss" calculations and failing to properly address this issue on appeal. The government filed a Response in opposition, and Dr. Persaud filed a Reply and a Supplement to his Reply. (ECF #223, 224, 225). This matter is now fully briefed and ready for disposition.

# FACTUAL AND PROCEDURAL HISTORY

Following a nearly month long jury trial, Dr. Persaud was convicted of fifteen counts of

Health Care Fraud, Making False Statements Relating to Health Care Matters, and Monetary

Transactions in Property Derived from Criminal Activity. The charges were based in large part

on claims that Dr. Persaud performed unnecessary medical procedures and tests, falsified medical

records and test results, including systematically over reporting the degree of arterial blockages in

his patients in order to justify additional procedures, and "upcoding" certain services performed

when billing insurers and Medicare, all for monetary gain. The jury also found that money seized

from Dr. Persaud's accounts was forfeitable as proceeds of this health care scheme; money in his

wife's account was related to his money-laundering conviction; and that his scheme generated

profits in the amount of $2,100,000. During trial, the Government presented testimony from

retained experts, and from physician witnesses, among others. The defense relied on one expert

cardiologist, two referring physicians, and a coding expert. Dr. Persaud was sentenced to twenty

years of imprisonment and restitution in the amount of $5,486,857.03.

Following his conviction, Dr. Persaud filed three separate appeals challenging the

conviction and sentence, the forfeiture order, and the restitution amounts. The Court of Appeals

affirmed Dr. Persaud's convictions on all counts, as well as the forfeiture order and the

restitution amount.

# LEGAL STANDARD

In order to obtain collateral relief "a prisoner must clear a significantly higher hurdle that

would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, (1982). There are only

four grounds upon which a request for relief under 28 U.S.C. § 2255 may be granted: "(1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-427 (1962). Dr. Persaud claims that his conviction and resulting sentence were imposed in violation of the Constitution of the laws of the United States, or are otherwise subject to collateral attack. In order to succeed, he must "sustain[] [his] contentions by a preponderance of the evidence." The burden of showing that he is in custody "in violation of the Constitution of the United States is on the prisoner," *See, eg., Jones v. Russell*, 396 F.2d 797 (6th Cir. 1968). *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Section 2255 relief is not available for alleged errors that are not of a constitutional or jurisdictional magnitude or that could have been reached by a direct appeal. *Stone v. Powell*, 428 U.S. 465, 477 (1976). "Once the defendant's chance to appeal has been waived or exhausted. . . we are entitled to presume that he stands fully and fairly convicted. " *United States v. Frady*, 456 U.S. 152, 164 (1982).

## ANALYSIS

I. Ineffective Assistance of Counsel

Both grounds in Dr. Persaud's petition seek redress for the alleged ineffectiveness of his trial and appellate counsel. A defendant seeking to establish ineffective assistance of counsel must satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court held that a defendant must first show that counsel's

3

performance was deficient. *Id.* at 687. This means that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. This inquiry must be made in proper context, considering the prevailing circumstances and counsel's perspective at trial, and without relying on the 20-20 vision created by hindsight. *See, Id.* at 688-89. In addition, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The Court should presume that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1363-54 (6th Cir. 1993).

In addition to proving deficiency under this highly deferential standard, a defendant must show that the deficient error by counsel was prejudicial to his defense. *Id.* at 692. It is not sufficient for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as nearly every conceivable "act or omission of counsel would meet this test." *Id.* at 693. Instead, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A. Ground One: Failing to challenge expert and lay witness opinion testimony

Dr. Persaud claims that his trial and appellate counsel were both ineffective for failing to lodge a *Daubert* challenge to the Government's expert witnesses at trial, and for failing to raise this issue on appeal. He also claims counsel were ineffective for failing to challenge the admission of opinion testimony from the physician witnesses who were not identified as expert

4

witnesses prior to trial. He claims that counsel was ineffective for failing to object to the introduction of expert testimony without the proper qualification of the expert witnesses, and for failing to object to the admission of opinion testimony by physician witnesses who testified for the Government but who were not identified in discovery as experts.

### 1. Identified Experts' Opinion Testimony

There is no question, based on the evidence presented at trial that the witnesses who had been identified as experts were sufficiently qualified to opine on the matters addressed by each at trial. "If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test." *United States v. Dado*, 759 F.3d 550, 566 (6th Cir. 2014). Counsel is not required to make a Daubert challenge to a expert testimony that clearly meets *Daubert's* standards for admissibility. Further, there is no need to conduct a voir dire on a proffered expert's qualifications if their qualifications are obvious. *See, United States v. Cobb*, 397 F. App'x 128, 139 (6th Cir. 2010). At trial, the Government presented evidence of each expert's qualifications, and with or without objection, the Court would have permitted the testimony of each expert based on the information provided. Dr. Persaud has offered no evidence or suggestion of any identifiable deficiency that would have prevented any of these experts from being qualified to offer testimony in this case.

Further, the qualifications of the expert witnesses were known to the defense prior to trial, so defense counsel was likely aware that any challenge to the admissibility of the expert's testimony would have been fruitless. Judicial scrutiny of counsel's performance is required to be highly deferential, and the exercise of sound strategy and judgment should be presumed. There was no need for Dr. Persaud's counsel to waste resources and time, and risk being seen as

unduly argumentative or incompetent by the jury, by objecting to the admission of clearly admissible testimony. It is well established that a defendant's right to counsel does not give him a right to force his counsel to present every possible non-frivolous argument that could be made on his behalf. *See, Jones v. Barnes*, 463 U.S. 745, 751 (1983). In addition, although Dr. Persaud's trial counsel did not baselessly attempt to attack the admissibility of the testimony, he did vigorously challenge the substance and credibility of the testimony at trial on cross-examination, and through the testimony of experts retained by the defense. Trial counsel's failure to challenge or object to the admission of the Government's retained experts was not unreasonable and did not prejudice Dr. Persaud's case in any way. Consequently, Dr. Persaud's appellate counsel was also not ineffective for raising this issue on appeal as it was clear that trial counsel did not err in allowing the testimony to be admitted unchallenged. Dr. Persaud has not presented any information that would suggest that his counsel's failure to challenge the admissibility of the Government experts' testimony was error, that it rose to the level of a constitutional violation, or that he suffered any prejudice whatsoever from this alleged error.

### 2. Physicians' Opinion Testimony

Dr. Persaud argues that physician witnesses called by the Government provided opinion testimony that was not allowed under Fed. R. Evid. 701, and was not properly qualified under Fed. R. Evid. 702. As part of his first ground for he relief, he claims that his trial and appellate counsel were ineffective for failing to object to the presentation of this evidence, and failing to object that these witnesses were not disclosed as experts prior to trial. The government argues that these physicians were not retained experts, provided testimony based upon on their own first hand observations, and to the extent that they may have provided opinions subject to Rule 702,

that they met all of the qualifications necessary to do so. A great deal of the testimony provided by the physicians was within the scope of Rule 701. They testified to what they saw and heard when reviewing patient files and test results and images, talking with patients, and in their personal interactions with Dr. Persaud. A lay witness may testify to the "appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010). To the extent that they may have also testified about conclusions or other opinions relating to the interpretation of any such information, there is no question that these physicians are qualified to be experts with special knowledge, training, and education in the medical field. Further, the fact that multiple physician witnesses, and retained expert witnesses testified similarly provides some evidence that these witnesses were applying reliable principles and methods to the facts of this case.

Dr. Persaud does not come out and allege that the physicians would not have been qualified as expert witnesses had they been overtly presented as such. Rather, he alleges that his counsel was deficient for failing to challenge the admission of such evidence. For all of the reasons set forth above in the discussion about the retained experts, Dr. Persaud's argument on this issue fails to convince. The physicians were clearly qualified to be experts based on their education and experience. As noted above, a defendant's right to counsel does not give him a right to force his counsel to present every possible non-frivolous argument that could be made on his behalf, and it certainly does not require an attorney to present motions that have no chance of success. *See, Jones v. Barnes*, 463 U.S. 745, 751 (1983). Dr. Persaud cannot establish any

prejudice stemming from his counsel's failure to raise an objection that would have been overruled.

Even if Dr. Persaud could show that his trial counsel's failure to challenge the admission of any opinion testimony offered by physician witnesses amounted to error, he has not established that the error rose to the level of a constitutional violation, or that he suffered any prejudice from that alleged error. Dr. Persaud identifies various rules of discovery and evidence that he claims were violated by the Government, but does not allege that these violations impacted Dr. Persaud's ability to present a defense, nor does he identify any changes that would have been made in his approach to trial if those rules had been followed. There is no allegation that Dr. Persaud or his counsel were unaware of the testimony expected to be offered by the physician witnesses, including what opinions those witnesses would espouse, what those opinions were based on, and what qualifications they had to render such opinions. Therefore, even if the Government failed to identify the physicians' testimony under Fed. R. Crim. P. 16(a)(1)(G), there is absolutely no basis upon which this Court could find that Dr. Persaud was prejudiced by this alleged failure. As set forth above, there is no evidence of inefficiency of appellate counsel and no evidence that Dr. Persaud was prejudiced by any alleged errors made by his counsel. Ground One provides no basis for the requested relief.

B. Ground Two: Amount of Loss Calculation

Dr. Persaud also argues that his counsel was ineffective for failing to object to the amount of loss calculation used to calculate his sentence. This claim is belied by the record. Trial counsel did object to the amount of loss calculation multiple times throughout the sentencing process, including in the Sentencing Memorandum (ECF #115, PageID 1111), in the objections

to the Presentence Investigation Report (ECF #106, PageID 926-928), and at the sentencing hearing. (ECF #133, PageID 1604-1611). Although, the Court ruled against Dr. Persaud on these objections and arguments, and his sentence was affirmed on appeal, there is no basis for a finding that his counsel was ineffective, since his counsel addressed these issues at every available opportunity prior to sentencing.

III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented a petition under 28 U.S.C. §2255. That section provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880,

893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Although the statute specifies that a certificate of appealability must be issued by a circuit justice or judge, the Sixth Circuit is one of three circuits that has held that this language includes both circuit and district judges. See, *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063 (6th Cir. 1997). The Federal Rules of Appellate Procedure have explicitly included district judges under this authority as well. Fed. App. R. P. 22(b)(1). This Court, after reviewing the standards and conditions required for the issuance of a certificate of appealability, and having thoroughly reviewed the arguments, both procedural and factual in support of Mr. Viola's motion to vacate, determines that there is no substantial showing of the denial of a constitutional right, and there is no reasonable basis upon which to debate the Court's procedural rulings. Therefore, the Court denies the certificate of appealability.

## CONCLUSION

For the reasons set forth above, Dr. Persaud's Motion to Vacate under 28 U.S.C. § 2255, (ECF #217), is DENIED and no certificate of appealability will be issued. IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: November 19, 2018