UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:14 CR 276 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| | ) | |
| HAROLD PERSAUD, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Second Motion For Compassionate Release under the First Step Act, which incorporates the arguments previously set forth in his original Motion and Supplement. (ECF # 253, 243, 246). The Government filed a Response in Opposition to Defendant's Motions, and the Defendant filed a Reply to the Government's Response. (ECF #257, 259).

Under the terms of the First Step Act, 18 U.S.C. §3582(c)(1)(A), inmates may file a request with the court to modify an imposed term of imprisonment for "extraordinary and compelling reasons." Prior to taking such action, however, an inmate is required to request that the Director of the Bureau of Prisons ("BOP") file a motion on his behalf, and to "fully exhaust[] all administrative rights to appeal a failure of the BOP to bring a motion." *Id.* Administrative rights are exhausted when the warden refuses to recommend that the BOP file a compassionate release motion with the court, and the prisoner appeals the denial using the BOP's Administrative Remedy program, or if there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Program Statement 1330.18; 28 C.F.R. 542(B), The Sixth Circuit has interpreted this to

mean that the exhaustion requirement is satisfied thirty days after a warden receives a request by an inmate, regardless of whether any administrative appeals are available or have been pursued. *See, United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). Mr. Persaud's original motion was dismissed for failure to satisfy these administrative requirements. (ECF #251). Prior to filing his Second Motion for Compassionate Release, it is undisputed that Defendant corrected this error by filing a request with the Warden and waiting thirty days after the Warden's denial before refiling his petition with the Court. Because thirty days have now passed since the Warden denied his request, the motion is properly before this Court.

In order to justify compassionate release a court must: (1) find that extraordinary and compelling reasons warrant a sentence reduction; (2) find that the reduction is consistent with applicable Sentencing Commission policy statements; and (3) consider the applicable §3553(a) factors. *See, United States v. Jones*, Case No 20-3701, at 9 (6th Cir., Nov. 20, 2020). The Sixth Circuit has recently held that, following the passage of the First Step Act, the policy statements set forth in U.S.S.G. §1B1.13 are not "applicable" policy statements that court must consider in making a decision on compassionate release. *Id.* at 13. "Until the Sentencing Commission updates §1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a §3582(c)(1)(A) motion." *Id.* A "compassionate release decision is discretionary, not mandatory." *Id.* at 9*; Cf. United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010).

For purposes of this opinion, the Court considered Mr. Persaud's filings, the Government's opposition, and the record as it relates to his original trial and sentencing. In addition it considered and balanced all the factors set forth in 18 U.S.C. §3553(a). The combination of factors at play in Mr. Persaud's case do not place him the same category as other inmates for whom this Court has found that release was appropriate.

The Court recognizes that the COVID-19 pandemic has created a stressful and dangerous environment for everyone, and that the dangers are exacerbated for those in certain categories. It is also clear that people who are confined in closed residential facilities, be it prisons, nursing homes, college dorms, or other similar facilities, are less able to protect themselves from exposure to the virus. However, as outlined in more detail the Government's brief, the BOP, just like every other institution responsible for the safety of a large number of vulnerable people have been making adjustments and improvement in their handling of the pandemic as new information comes in, risk factors are re-assessed, and best practices are revised. The BOP has taken action, within its statutory authority under 18 U.S.C. §3624 and Pub. L. No. 116-136, §12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. §3621), to move the most vulnerable/lowest risk inmates to home confinement. [1] It is also important to note that the general non-prison population is also at an all time high risk for contraction of COVID-19 due to surges in community spread. Therefore, the risk differential between the general and special populations is not currently as high as it may have been at the beginning of the pandemic.

When considering a petition for early release, the Court, cannot be guided solely by an individual inmate's heightened risk factors for COVID-19. The Court must also use its discretion to make a determination as to whether the individual's situation is extraordinary and compelling when viewed in the context of other incarcerated individuals. It must also balance all of the §3553 sentencing factors, including but not limited to, the nature and circumstances of the offense, the history and character of the defendant, the need for the sentence originally imposed, the protection of the community, the avoidance of unwarranted sentencing disparities, and all of the other considerations that went into the original sentencing decision.

---

[1] Mr. Persaud did not qualify for home confinement under these statutes.

Mr. Persaud admittedly has risk factors that heighten his susceptibility to COVID-19. According to the Center for Disease Control ("CDC") Mr. Persaud's diagnosed condition of diabetes mellitus type 2 puts him at high risk of severe illness should he contract the virus.  He also claims to suffer from hypertension and is 61 years of age.  In addition to his own health issues, Mr. Persaud argues that the Court should consider that his wife is recovering from heart surgery and needs his assistance.  It should be noted, Mr. Persaud has two adult children who could provide assistance to Mrs. Persaud.  However, even if the Court were to find that the pandemic, Mr. Persaud's health issues, and his family situation combine to create extraordinary and compelling reasons for relief, when full consideration is given to the 18 U.S.C. §3553(a) factors, it becomes apparent that Mr. Persaud is not entitled to a reduction in sentence.

Following an almost month long jury trial, Mr. Persaud was convicted of fifteen counts of Health Care Fraud, Making False Statements Relating to Health Care Matters, and Monetary Transaction in Property Derived from Criminal Activity.  These charges were based in large part on claims that Mr. Persaud performed unnecessary medical procedures and tests, falsified medical records and test results, including systematically overstating the degree of arterial blockages in his patients in order to justify additional procedures, and upcoding certain services performed when billing Medicare, all for monetary gain.  The jury found that his scheme generated profits in excess of two million dollars.  At the time of sentencing, Mr. Persaud was subject to multiple adjustments and enhancements based on the vulnerability and number of his victims, and because he created a reckless risk of death and serious bodily injury for his patients, abused of a position of trust, and obstructed justice.  To the Court's knowledge, he has still never accepted full responsibility for his actions.  He had a total offense level of 43, with a criminal history of one.  His guideline range would have been life, however, the statutory maximum equaled out to twenty years.  The Court, therefore, sentenced him to twenty years in

prison.  He was allowed to self-report and began serving his sentence sometime in 2016.  He has served less than five, of his twenty year sentence.

A sentence of less than five years would not reflect the seriousness of this crime, or the harm done to his victims and would give Mr. Persaud a disparately low sentence compared to other defendants who engage in similar behavior.  Among other things, Mr. Persaud defrauded public and private insurance companies out of over five million dollars, and performed unnecessary and invasive procedures on patients.  Victim statements highlight the extreme physical and emotional impact of his actions on his victims.  Although he faces higher risks if he were to contract COVID-19, he currently does not suffer from any debilitating health conditions, and he is not hampered in his ability to provide self-care within the institution.  His health issues appear to be under control and appropriately treated, and at this time there are no reported cases of inmates with COVID-19 at his institution.

For the reasons set forth above, having considered the record, Mr. Persaud's arguments, and all of the factors set forth in 18 U.S.C. §3553(a), the Court finds, in its discretion, that the Defendant's Second Motion for Compassionate Release should be DENIED.  (ECF #253).  IT IS SO ORDERED.


_____
DONALD C. NUGENT
Senior United States District Judge

DATE: November 24, 2020